UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

JUDGE BERMAN

TOUREAN LOCKHART, JAMES LOCKHART and
ANNETTE LOCKHART,

                        Plaintiffs,

             -against-

CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, SERGEANT ROBERT
NUGENT and DETECTIVE DAVID BONACARTI,

                       Defendants.

------------------------------------------X

13 CV 6941

COMPLAINT

Docket No:

Jury Trial Demanded

RECEIVED
OCT 0 1 2013
U.S.D.C. S.D.N.
CASHIERS

Plaintiff's TOUREAN LOCKHART, JAMES LOCKHART and ANNETTE LOCKHART by their attorney, Craig L. Davidowitz, P.C., hereby respectfully allege for their complaint against the City of New York, the New York City Police Department, Sergeant Robert Nugent and Detective David Bonacarti (collectively, "Defendants") as follows:

## NATURE OF THE INSTANT ACTION

1.    This is a civil action, brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the Fourth and Fourteenth Amendments to the United States Constitution, and under the common law and the constitution of the State of New York, against the City of New York, Sergeant Robert Nugent, Detective David Bonacarti, and their employer, the New York City Police Department.

2.    The instant action seeks to hold the Defendants liable for false arrest, wrongful detainment in custody,

assault, harassment, malicious prosecution, and misconduct under the federal civil rights statute, 42 U.S.C. §1983 and *Monell v. Dep't of Social Services,* 436 U.S. 658 (1978). The unlawful actions of the defendants, alleged hereunder, resulted from affirmative *de facto* municipal policies, practices and customs to violate the constitutional rights of criminal suspects and defendants, or from deliberate indifference by policy-making officials, acting on behalf of the City of New York, to such violations.

3.   As Plaintiff will demonstrate hereunder, as a matter of policy, the actions of Sergeant Nugent and Detective Bonaparte, which violated the rights of the plaintiff, reflects a corrupt culture of misconduct indicative of New York Police Department police officers that has long existed at New York City Police precincts.  Despite having numerous alibi witness and documented alibis and for the three robberies on October 4, 2010, October 14, 2010 and October 18, 2010 evidencing the plaintiff could not have committed the alleged crimes, the plaintiff was arrested by Detective Bonacarti, who at the time of the plaintiffs arrest was a police officer.  Detective Bonacarti was ordered by his supervisor Sergeant Nguyen to make sure that all three crimes fit into a robbery pattern. Furthermore, Detective Bonacarti was informed if he arrested the plaintiff and made a case against him, he would be promoted to detective, which would not only be a promotion but a raise in salary.

4.   By this action, the plaintiff seeks redress for the violations of his constitutional and civil rights and to recover damages he suffered as a result of the incidence complained of hereunder, including but not limited to legal

2

fees, costs and expenses associated with defending the criminal proceedings, loss of reputation, costs and expenses associated with prosecuting the civil matter, punitive damages, mental anguish, pain and suffering, inconvenience, humiliation, and fear.

## JURISDICTION AND VENUE

5.   Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1331 and §1343, as this action seeks redress for the violation of Plaintiff's federal constitutional and civil rights.

6.   Plaintiff further invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over any and all state constitutional or common law claims ("State Claims") that are so related to the instant claims within the original jurisdiction of this court that they form part of the same controversy.

7.   Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c).

## PARTIES

8.   Plaintiff TOUREAN LOCKHART is a resident of the State of New York, County of Bronx.

9.   Plaintiff JAMES LOCKHART is a resident of the State of New York, County of Bronx, and the father of the plaintiff TOUREAN LOCKHART.

10.   Plaintiff ANNETTE LOCKHART is a resident of the State of New York, County of Bronx, and the mother of plaintiff TOUREAN LOCKHART.

11.   Defendant City of New York s a municipal entity created and authorized under the laws of the State of New York. Upon information and belief, it is authorized under the laws of the State of New York to maintain a police department, the New York Police Department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.  The New York Police Department's operations include the operations as described herein. Upon information and belief, the federal government partially funds the law enforcement activities of the New York Police Department.

12.   Defendant New York City Police Department is an agency of the City of New York. Upon information and belief, Sergeant Nugent, a defendant named hereunder, holds a supervisory position as an agent and employee of the New York Police Department. The New York Police Department is legally responsible for torts its agents and employees commit within the scope of his/her employment and/or under color of law.

13.   Sergeant Nugent, at all relevant times, is and was a commissioned officer employed by the New York Police Department, and acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the City of New York and acted within his scope of employment. He is sued in both, his individual and official capacities.

4

14. Defendant New York City Police Department is an agency of the City of New York. Upon information and belief, Detective Bonacarti, a defendant named hereunder, holds a supervisory position as an agent and employee of the New York Police Department. The New York Police Department is legally responsible for torts its agents and employees commit within the scope of his/her employment and/or under color of law.

15. Detective Bonacarti, at all relevant times, is and was a commissioned officer employed by the New York Police Department, and acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the City of New York and acted within his scope of employment. He is sued in both, his individual and official capacities.

16. At all relevant times, defendant's City of New York and the New York Police Department were responsible for the policy, practice, supervision, implementation, and conduct of all New York Police Department matters and were responsible for the appointment, training, supervision, and conduct of all New York Police Department employees. In addition, defendant's City of New York and the New York Police Department were responsible for ensuring that its employees, including Sergeant Nugent and Detective Bonacarti, obey the laws of the United States and the laws of the State of New York.

## JURY DEMAND

17. Plaintiff demands a jury in this action.

## FACTUAL ALLEGATIONS

18.  Upon information and belief, on October 4, 2010 at approximately 10:19 p.m. in front of 4133 Gunther Avenue, County of Bronx the plaintiff with another male allegedly was involved in the armed robbery of John Huston, using a hand gun to forcibly remove John Huston's cell phone and wallet, and then leaving the scene in a vehicle owned by Jaubon P. McKelvin.

19.  Upon information and belief, on October 4, 2010 at approximately 11:15 p.m., and October 6, 2010 at approximately 6:05 p.m., John Huston viewed a photograph array and did identify the plaintiff as one of the persons who robbed him.

20.  Upon information and belief, on October 6, 2010, at approximately 9:30 a.m., the plaintiff was placed under arrest by Detective Thomas Green under arrest number B10680420.

21.  Upon information and belief, as a result of the October 4, 2010 alleged crime, a Grand Jury indicted the plaintiff of the crimes of robbery in the first degree, two counts of robbery in the second degree, robbery in the third degree, three counts of grand larceny in the fourth degree, two counts of criminal possession of stolen property in the fourth degree, criminal possession of stolen property in the fifth degree and petit larceny.

22. Upon information and belief, as a result of the October 6, 2010 arrest, the plaintiff was incarcerated for two days.

23. Upon information and belief, on October 14 2010 at approximately 8:15 p.m. in front of 4331 Murdock Avenue, County of Bronx, the plaintiff and three other individuals allegedly removed a cell phone from Ricky Destin. Mr. Destin was sitting in his parked Volkswagen Jetta when one of the individuals allegedly displayed a silver firearm and instructed him to exit his vehicle, stealing his cell phone.  The individuals then attempted to flee in Mr. Destin's vehicle but were not able to as none of the individuals could drive a manual transmission vehicle.  The individuals fled on foot from the scene.

24. Upon information and belief, on October 14, 2010 at approximately 9:35 p.m., Mr. Destin did view a New York City Police Department PhotoManager but was not able to identify his assailants.

25. Upon information and belief, on October 14, 2010 at approximately 9:55 p.m. Mr. Destin's vehicle was processed for finger prints and DNA evidence.

26. Upon information and belief, as a result of the alleged October 14, 2010 crime, a Grand Jury indicted the plaintiff of the crimes of two counts of robbery in the first degree, two counts of robbery in the second degree, robbery in the third

degree, grand larceny in the third degree, and grand larceny in the fourth degree.

27. Upon information and belief, as a result of the October 14, 2010 arrest, the plaintiff was incarcerated for 1 day.

28. Upon information and belief, on October 18, 2010 at approximately 9:30 p.m. Mecalla Lascelles was walking home from his daughter's house when the plaintiff and two other individuals allegedly used a firearm to forcibly remove Mr. Lascelles wallet. The two perpetrators then walked away from the scene of the crime. Mr. Lascelles walked to his house, and then went to the police precinct to report the incident the next day.

29. Upon information and belief, on October 19, 2010 at approximately 2:45 p.m. the plaintiff was arrested by defendant detective David Bonacarti at his residence located at 4468 Wilder Avenue alleging that the plaintiff was responsible for the three abovementioned robberies.

30. Upon information and belief, as a result of the October 18, 2010 alleged crime, a Grand Jury indicted the plaintiff of the crimes of robbery in the first degree, robbery in the second degree, robbery in the third degree, criminal possession of stolen property in the fifth degree, and petit larceny.

31. Upon information and belief, as a result of the October 18, 2010 arrest, the plaintiff was incarcerated for three days.

32. Detective Bonacarti never obtained a search warrant prior to arresting the plaintiff. No search was ever conducted by any member of the New York Police Department for the weapon, a hand gun, that the plaintiff allegedly used to commit the above mentioned robberies or for any of the alleged stolen items.

33. A DNA search of the interior of Ricky's Destin's vehicle was done after the plaintiff was alleged to have entered the vehicle. On December 28, 2010 a buccal swab was taken from Ricky Destin and samples were also taken from the interior of the Volkswagen Jetta, specifically swabs from the four interior door handles, a swab from the steering wheel and a swab from the gear shift. On December 29, 2010 PCR DNA typing was done on a drinking straw used by the plaintiff.

34. The result of the DNA profile indicated that there was no match of the DNA swabs taken from the interior of the Destin vehicle to the DNA taken from the plaintiff.

35. During their investigation the defendants ignored the fact that the plaintiff had alibi's that could exonerate him for all of the abovementioned crimes that he was charged with.

36. The October 4, 2010 crime was alleged to have occurred at 10:19 pm in front of 4133 Gunther Avenue, Bronx N.Y.  On that date, the plaintiff was participating in basketball practice at the Chris Ward Player Development Program at Family Court Sports located at 150 Clearbrook Rd. Elmsford New York.  The program is held every Monday from 8 pm to 9:45 pm starting on Monday September 20, 2010 and continuing each Monday until October 18, 2010.  The plaintiff was with his father James Lockhart at all of the basketball practices.  After practice on October 4, 2010 both the plaintiff and his father stopped at Popeye's Restaurant at 233rd Street and Baychester Avenue, Bronx New York, and did not arrive home until approximately 10:35 pm.  The plaintiff was with his father eating food after basketball practice at the time the alleged robbery occurred.

37.  The October 14, 2010 crime was alleged to have occurred at 8:15 pm in front of 4331 Murdock Avenue, Bronx N.Y.  On that date, the plaintiff was with his father at home all day and was on "Twitter" sending messages through his cell phone.  The plaintiff was "Tweeting" from home at the exact time that the alleged crime was to have taken place.

38. The October 18, 2012 crime was alleged to have occurred at 9:30 pm at the vicinity of Gunther Avenue and Pitman Avenue, Bronx N.Y.  Plaintiff was participating in basketball practice at the Chris Ward Player Development Program at Family Court

Sports located at 150 Clearbrook Rd. Elmsford New York. The practice was held from 8 pm to 9:45 pm. At the time of the alleged crime, the plaintiff was in Elmsford, N.Y. playing basketball.

39. The defendants were provided with the names of Chris Ward, Garitt A. Kono, a parent whose son was also participating in basketball practice with the plaintiff on October 4, and October 18, 2010, and Neville Goldson. The names of all three alibi witnesses were provided to the defendants but they were never interviewed by any police personnel including but not limited to the investigating officers, Detective Bonacarti or Sergeant Nugent. Furthermore, all three witnesses testified at the plaintiff's criminal trial that he did not commit any of the three alleged crimes.

40. Sergeant Nugent and Bonacarti ignored the alibi information. The investigating officers deliberately failed to follow up and question any of the alibi witnesses to see if in fact it was possible for the plaintiff to have committed the any of the three crimes that he was charged with.

41. Sergeant Nugent ordered Detective Bonacarti to make the October 4, October 14 and October 18, 2010 crimes fit into a pattern so that they could further attempt to bolster the charges against the plaintiff, despite the overwhelming evidence that the plaintiff could not have committed any of the crimes.

42. Detective Bonacarti was also told that if he was able to create a robbery pattern out of the three crimes that this would greatly enhance his ability to be promoted to the rank of Detective, which is not only a promotion, but a pay raise, and allows Detective Bonacarti to perform his job in plain clothes. See exhibit "A" annexed hereto.

43. The defendants also failed to properly investigate the alleged victims of the three crimes backgrounds for the truth and veracity of their statements.

44. Mr. Houston was never interviewed by any police officer after his October 4, 2010 robbery yet that crime was included with the October 14 and October 18, 2010 robberies and made to fit into a pattern of armed robberies that the plaintiff was charged with committing.

45. Furthermore, Mr. Huston was convicted of two prior felonies and was in prison numerous times, and not a very reliable witness, yet he was never interviewed by any officer and his identification of the plaintiff as the person who robbed him was never questioned.

46. Mr. Destin had a prior criminal record for robbery and selling controlled narcotics, yet despite this, the defendants arrested and tried the plaintiff based on Mr. Destin's statements.

47. Mr. McCalla also had a prior criminal record for robbery and selling controlled narcotics and the defendants accepted his statement that the plaintiff robbed his as the truth.

48. Detective Bonacarti never noted in his reports that Mr. McCalla took approximately sixteen hours to report his robbery. Detective Bonacarti simply assumed that Mr. McCalla was telling the truth about his October 18, 2010 robbery.

49. Two lineups were held by the defendants. In both line-ups, the police brought in the same group of people. All of the persons in the line-ups, with the exception of the plaintiff, were in their mid twenties and were dark skinned African Americans with facial hair. The plaintiff at the time of the lineup was seventeen years old and a light skinned African American with no facial hair. There was no resemblance to the plaintiff of the other persons in the two line-ups.

50. The defendants acted in bad faith by deliberately using individuals in the two line-ups who did not resemble the plaintiff. The line-ups were prejudicial and unfairly biased against the plaintiff.

51. Subsequently, the plaintiff was tried for the abovementioned crimes in the Supreme Court of the State of New York, County of Bronx, Criminal Term Part T - 14.

52.  The plaintiff was found not guilty of all the charges.

53.  Defendants knew that the charges were knowingly false and malicious.

## FIRST CAUSE OF ACTION

DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. §1983 AGAINST DEFENDANT CITY OF NEW YORK, New York City POLICE DEPARTMENT, SERGEANT ROBERT NUGENT AND DETECTIVE DAVID BONACARTI

54.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 53 with the same force and effect as if fully set forth herein.

55.  Defendant City of New York and its agents, servants and employees, including but not limited to defendants Nugent and Bonacarti deprived plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America and in violation of 42 U.S.C. §1983.

56.  All of the aforementioned acts of all defendants named herein were carried out under the color of state law.

57.  Sergeant Nugent carried out the acts complained of herein in his official capacity as a Police Sergeant with the actual and/or apparent authority attendant thereto.

58.  Sergeant Nugent carried out the acts complained of in his capacity as a police officer, pursuant to the customs, usages, practices, procedures, and the rules of defendant's City

of New York, the New York Police Department, as a ranking officer of the New York Police Department.

59. Detective Bonacarti carried out the acts complained of herein in his official capacity as a police officer with the actual and/or apparent authority attendant thereto.

60. Detective Bonacarti carried out the acts complained of in his capacity as a police officer, pursuant to the customs, usages, practices, procedures, and the rules of defendant's City of New York and the New York Police Department, as a ranking officer of the New York Police Department.

61. All defendants, collectively and individually, while acting under color of state law, engaged in unconstitutional conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality's authority, which is forbidden by the Constitution of the United States.

62. As a result of the defendants' conduct, which inherently violated the Constitution of the United States, caused the plaintiff significant harm and injury.

63. As a result of the defendants' unconstitutional conduct, plaintiff demands judgment against all defendants in a sum of money to be determined at trial.

## SECOND CAUSE OF ACTION

VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS UNDER 42 U.S.C. §1983ARISING FROM DEFENDANTS' MALICIOUS PROSECUTION OF THE PLAINTIFF

15

64.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 63 with the same force and effect as if fully set forth herein.

65.  Despite having alibis for the three robberies on October 4, 2010, October 14, 2010 and October 18, 2010 that the plaintiff was arrested for, Detective Bonacarti, who at the time of the plaintiffs arrest was a police officer, was ordered by his supervisor, Sergeant Nguyen to create a robbery pattern for the three abovementioned crimes.  Furthermore, Detective Bonacarti was informed if he arrested the plaintiff and made a case against him, he would be promoted to detective, which would be a promotion and a raise in salary and allow him to work in plain clothes.

66.  Despite being told of three alibi witnesses, the defendants failed to interview them prior to maliciously prosecuting the plaintiff for the three abovementioned crimes.

67.  The defendants failed to properly investigate and verify the alleged victim's backgrounds to confirm the truth and veracity of their statements prior to maliciously prosecuting the plaintiff.

68.  The criminal trial ended with the jury returning a not guilty verdict as to all of the charges.

69.  The defendants prosecuted the plaintiff with malice.

70.  The defendants prosecuted the plaintiff with malicious intent.

71. Sergeant Nugent acted maliciously in ordering Detective Bonacarti to creating a robbery pattern for all the alleged robberies in an attempt to maliciously prosecute and convict the plaintiff for crimes that he did not commit.

72. Detective Bonacarti acted maliciously in arresting the plaintiff for three robberies that he did not do and creating a robbery pattern in an attempt to maliciously prosecute and convict the plaintiff for crimes that he did not commit.

73. Despite being told of three alibi witnesses, the defendants failed to interview them prior to prosecuting the plaintiff for the three abovementioned crimes to ascertain if the plaintiff could have committed the alleged crimes.

74. The defendants failed to properly investigate and verify the alleged victim's backgrounds to confirm the truth and veracity of their statements prior to prosecuting the plaintiff.

75. As a result the plaintiff was harmed, and seeks compensation in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS UNDER 42 U.S.C. §1983 ARISING FROM DEFENDANTS' FALSE ARREST OF THE PLAINTIFF

76. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 75 with the same force and effect as if fully set forth herein.

17

77.   Sergeant Nugent ordered Detective Bonacarti to create a pattern between the October 4, 2010, October 14, 2010, and October 18, 2010 robberies so as to be able to falsely arrest and convict the plaintiff for crimes that he did not commit.

78.   The defendants failed to obtain a search warrant for the plaintiff's premises after his three arrests to look for the hand gun and stolen objects that the a part of the plaintiff crimes.

79.   No attempt was ever made by any member of the New York City Police Department to search for any of the alleged weapon used by the plaintiff or for any of the alleged items that were stolen prior to arresting him.

80.   The defendant's were never in possession of either the weapon used to commit the alleged robberies or the goods that were stolen.

81.   The defendants falsely arrested the plaintiff.

82.   The defendants acted in bad faith in not fully investigating the facts of the alleged crimes.

83.   The defendants did not have probable cause to arrest the plaintiff.

84.   The defendants acted in bad faith in arresting the plaintiff.

85.   Despite being told of three alibi witnesses, the defendants failed to interview them prior to falsely arresting

the plaintiff for the three abovementioned crimes.

86. The defendants failed to properly investigate and verify the alleged victim's backgrounds to confirm the truth and veracity of their statements prior to arresting the plaintiff.

87. The Grand Jury indictment creates a presumption of probable cause to believe that the plaintiff committed the crime.

88. This presumption can be overcome by evidence establishing that the police witnesses have not made a complete and full statement of facts to either the Grand Jury or the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence of otherwise acted in bad faith. *See Colonv Cith of New York,* 60 N.Y.2d 78 (1983); *Jean-Mary v City of New York,* 234 A.D.2d 515 (1996); *Carthens v City of New York,* 168 A.D.2d 408 (1990).

89. The totality of the evidence presented to the defendants by the plaintiff outweighed any probably cause they had to arrest and charge the plaintiff for the abovementioned crimes.

90. As a result, Plaintiff was severely injured and seeks compensation in a sum to be determined at trial.

## FOURTH CAUSE OF ACTION

VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS UNDER 42 U.S.C. §1983 ARISING FROM DEFENDANTS' FALSE IMPRISONMENT OF THE PLAINTIFF

91.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 90 with the same force and effect as if fully set forth herein.

92.   Plaintiff was confined against his will.

93.   Plaintiff's confinement was not privileged.

94.   Plaintiff's was conscious of his confinement.

95.   Plaintiff was deprived of his liberty as a result.

96.   Plaintiff was falsely imprisoned.

97.   The plaintiff was falsely imprisoned despite the defendants being in possession of evidence that could reasonably lead to his release.

98.   The defendants kept the plaintiff falsely imprisoned despite failing to adequately and fully investigate the charges against him.

99.   Defendants false imprisonment of the plaintiff negligently and intentionally caused him to sustain emotional distress.

100.  As a result, Plaintiff was severely injured and seeks compensation in a sum to be determined at trial.

## FIFTH CAUSE OF ACTION

VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS UNDER 42 U.S.C.

§1983 ARISING FROM DEFENDANTS' NEGLIGENT HIRING, RETENTION AND
TRAINING OF ITS POLICE OFFICERS AND MEMBERS

101. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 100 with the same force and effect as if fully set forth herein.

102. The City of New York protects and isolates members of the New York Police Department from any personal liability for civil damages when officers such as Robert Nugent and David Bonacarti are accused of violating the constitutional rights of individuals, by indemnifying officers against that are accused of committing bad acts.

103. By doing so, the City of New York removes and neutralizes the strong deterrent effects that documented accusations and subsequent liability would otherwise have on NYPD officers accused of committing acts that violate individuals' constitutional rights.

104. Moreover, the City of New York and the New York Police Department do not discipline its members for incurring civil liability, nor for being accused of violating the constitutional rights of individuals and as a result, members of the New York Police Department continue to commit unconstitutional acts against individuals in their custody.

105. Furthermore, the City of New York and the New York Police Department do not train or educate their officers and employees for incurring civil liability, or as a result of receiving civilian complaints against their officers' unconstitutional acts of violence against individuals in

their custody.

106. Shielded by these policies of the City of New York and the New York Police Department, officers and employees continue to commit unconstitutional acts which are an example of this practice.

107. The defendants negligently hired and retained its agents, servants, officers and/or employees.

108. The defendant's actions lead to a criminal trial of the plaintiff that could have been avoided if the defendants performed their jobs an appropriate manner and competent manner.

109. As a result, Plaintiff was severely injured and seeks compensation in a sum to be determined at trial.

## SIXTH CAUSE OF ACTION

MUNICIPAL LIABILITY UNDER *MONELL* UNDER 42 U.S.C. §1983
ARISING FROM UNCONSTITUTIONAL MUNICIPAL POLICIES AND CUSTOMS

110. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 109 with the same force and effect as if fully set forth herein.

111. Defendant City of New York and New York Police Department established official policies directing and promoting unconstitutional practices by New York Police Department officers and have tolerated, condoned and permitted widespread unconstitutional practices by New York Police Department

officers, including Sergeant Nugent and Detective Bonacarti.

112. Defendant's The City of New York and The New York City Police Department employs a municipal policy and custom known as the "Compstat" program that was instituted to reduce crime.

113. The Compstat program personnel developed the Pattern Identification Module (PIM) for each borough of the City in a attempt to reduce crime.

114. The Pattern Identification Module (PIM) was employed to identify patterns of crime by trends, clusters, method and location and keep track of perpetrator descriptions for similarities and identification amongst alleged perpetrators.

115. The Pattern Identification Module (PIM) of the Compstat program and policy would permit defendants The City of New York and the New York City Police Department to fit a series of crimes into "patterns."

116. Defendants The City of New York and The New York City Police Department's Pattern Identification Module Program (PIM) would fit and identify individual and distinct crimes as patterns crimes involving the same perpetrator(s) despite being distinct and separate crimes.

117. The actions of defendants Sergeant Nugent and Detective Bonacarti in executing multiple arrests of plaintiff were a direct attempt to make individual and distinct crimes fit into a pattern.

118. Defendants The City of New York and The New York City

Police Department had a custom and policy in effect at the time of plaintiff's arrests and imprisonment of intentionally identifying distinct and separate crimes as "pattern crimes" to statistically reduce the crime rate numbers in New York City which resulted in a direct violation of plaintiff's constitutional rights as plaintiffs alleged acts were classified as a "pattern."

119. Defendants Pattern Identification Module Program (PIM), as part of the Compstat policy and program, was unconstitutional as arrests were made to fit into a "pattern" in an effort to reduce crime statistic numbers in New York City, including that of plaintiff.

120. Defendant City of New York indemnifies and shields New York Police Department officers who repeatedly and habitually violate constitutional rights, such as Sergeant Nugent and Detective Bonacarti.

121. Defendant City of New York fails to discipline police misconduct, thereby insuring that such misconduct continues.

122. Defendant City of New York implements tolerates and fails to punish unlawful excessive use of force by police officers, as is evident here by its failure to demote and/or discipline Officers Nugent and Bonacarti.

123. Defendant City of New York implements tolerates and fails to punish unlawful and false arrests.

124. These policies and practices caused the unlawful conduct of Officers Nugent and Bonacarti.

125. As a result, plaintiff was harmed and injured and seeks compensation in a sum to be determined at trial.

## SEVENTH CAUSE OF ACTION

### PLAINTIFF JAMES LOCKHART AND PLAINTIFF ANNETTE LOCKHART ARE ENTITLED TO REIMBURSEMENT FOR LEGAL FEES AND EXPENSES

126. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 124 with the same force and effect as if fully set forth herein.

127. Plaintiff's JAMES LOCKHART and ANNETTE LOCKHART seek the reimbursement of $200,000.00 which includes but is not limited to payment to the criminal attorney, and other ancillary expenses associated with the confinement and trial of the plaintiff TOUREAN LOCKHART.

## EIGHTH CAUSE OF ACTION

### PLAINTIFF ATTORNEY IS ENTITLED TO REASONABLE ATTORNEY'S FEES PURSUANT TO 42 U.S.C. SECTION 1988

128. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 119 with the same force and effect as if fully set forth herein.

129. In any action or proceeding to enforce a provision of 42 U.S.C. Section 1983, the court in its discretion, may allow the prevailing party, other that the United States, a reasonable attorney's fee as part of the costs.

130. Plaintiff's attorneys hereby request that if they prevail in the above litigation that they be awarded reasonable attorney's fees as part of the costs.

WHEREFORE, it is respectfully requested that the Court assume jurisdiction and:

a)    Invoke pendent party and pendent claim jurisdiction;

b)    Award appropriate compensatory and punitive damages;

c)    Empanel a jury;

d)    Award the plaintiff's reimbursement of the legal fees they had to pay to their criminal attorney;

e)    Aware attorneys fees and costs;

f)    Award such other and further relief as the Court deems to be proper and in the interest of justice.

DATED:    New York, New York
          September 30, 2013


                        Respectfully submitted,


                        _____
                        CRAIG L. DAVIDOWITZ, P.C.

                        Craig L. Davidowitz(CD1107)
                        *Attorneys for Plaintiff*
                        Office & P.O. Address
                        450 Seventh Avenue,
                        Suite 1508
                        New York, NY 10018
                        Tel. (212) 378-2051
                        Fax    (212) 378-2054


26

## ATTORNEY'S VERIFICATION

The undersigned, an attorney admitted to practice in the Courts of the State of New York, affirms under the penalties of perjury:

That deponent is the attorney of record for the plaintiff(s) in the within action; that deponent has read the foregoing **SUMMONS & VERIFIED COMPLAINT** and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters, deponent believes those to be true. Deponent further states that the reason this verification is made by deponent and not by the plaintiff(s) is that plaintiff(s) reside(s) in a county other than that in which deponent maintains his/her offices.

The grounds for deponent's belief as to all matters not stated upon his/her knowledge are investigations which he/she has made or has caused to be made concerning the subject matter of this action, and statements of parties or witnesses herein.

Dated:   New York, New York
         September 30, 2013

_____
CRAIG L. DAVIDOWITZ

EXHIBIT "A"

Docket No.: 13-CV-6941

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
TOUREAN LOCKHART, JAMES LOCKHART and
ANNETTE LOCKHART,

         Plaintiffs,

   -against-

CITY ON NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, SERGEANT ROBERT
NUGET and DETECTIVE DAVID BONACARTI,

         Defendants.
-------------------------------------------------------------


_____
_____

SUMMONS AND VERIFIED COMPLAINT

_____
_____


CRAIG L. DAVIDOWITZ, P.C.
*Attorney for Plaintiff*
Office and P.O. Address
450 Seventh Avenue, Suite 1508
New York, New York 10123
Tel: (212) 378-2051
Fax: (212)378-2054